Harvey *v.* Allegheny County Retirement Board, Appellant.

Argued October 8, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*John P. Hester,* with him *Hoffman & Hester,* for appellant.

*Frank Reich,* for appellee.

OPINION BY MR. JUSTICE COHEN, March 26, 1958:

We are called upon in this appeal to review once again the provisions of the Retirement Act of Allegheny County, and to determine the nature of the interests acquired thereunder by county employes.

The plaintiff, Harvey, began his employment with Allegheny County on May 1, 1928, as a guard in the County Workhouse and Inebriate Asylum. On that date, the Pension Act of May 8, 1919, P. L. 138, was in effect. The act provided for contributions by county employes to the County Pension Fund of one per cent of their monthly salaries. In return, upon reaching the age of fifty years after having been in the employ of the county for a period of not less than twenty years, each employe was entitled to receive a pension equal to fifty per cent of his average annual salary to a maximum monthly amount of $100.

Five years later, while Harvey continued his employment with the county, the legislature substantially

changed the retirement system of Allegheny County. The Act of May 22, 1933, P. L. 840, made sweeping changes in the retirement program, and insofar as relevant to this appeal, increased the rate of employe monthly contributions to the pension fund from one to three per cent, and increased the voluntary retirement age from fifty to sixty years, provided that if after twenty years of service an employe were separated from county employment "by reason of no cause or act of his own," he might nevertheless retire at age fifty with full benefits. Two years later the Act of April 4, 1935, P. L. 12 increased employe contributions from three to five per cent of their monthly earnings and raised the maximum monthly amount payable to $10. Finally, the Act of May 31, 1947, P. L. 354, further increased the maximum monthly amount of contributions to the system from $10 to $15, and, at the same time, also increased the maximum monthly retirement allowance obtainable by an employe from $100 to $150.

Harvey continued as an employe of the county until his separation from the service on February 28, 1951, being then over fifty years of age and having been employed continuously for almost 23 years. It is undisputed that Harvey had fulfilled all requirements necessary to obtain the retirement allowance under the Act of 1919. It is likewise conceded that Harvey had complied with the requirements of later county retirement acts providing for increased rates and increased amounts of employe contributions to the retirement fund.

Following his dismissal, Harvey filed an application for a retirement allowance with the defendant Retirement Board. His application was refused on the ground that he had been dismissed from his position for cause, and therefore, under the 1947 retirement

law, Harvey would be required to continue to contribute to the fund until he attained age 60, at which time he would become eligible to receive the retirement allowance. Harvey thereupon instituted an action in mandamus in the Court of Common Pleas of Allegheny County, on December 8, 1952, to compel the Retirement Board to pay him his retirement allowance from the date of his separation from the county service. Harvey's original complaint alleged that he had been separated from the service for no cause or act of his own, and that he was entitled to the monthly allowance under the Act of 1947. Subsequently, in 1956, he amended his complaint to allege that his retirement rights were controlled by the law in effect on the date of his original employment rather than the act in effect at the time of his dismissal.

The trial court, after agreement between the parties that only the question of law raised by the amended complaint was to be considered, held that Harvey's eligibility for retirement was to be determined under the Act of 1919, the law in effect on the date of his entry into the county service, but that the amount of the retirement allowance was to be determined by the Act of 1947, the law in effect at the time of his separation. Accordingly, the court entered judgment on the pleadings and issued a writ of mandamus directing the Retirement Board to pay Harvey all the monies due him as a retired county employe, with interest thereon from the date of his dismissal from the county service, and thereafter a monthly retirement allowance as provided for in the 1947 retirement law. From this judgment the Retirement Board has brought the present appeal.

Recent decisions of this Court have effected a pronounced change in the law relating to public retirement systems. *Compare Baker v. Retirement Board*

*of Allegheny County,* 374 Pa. 165, 169, 97 A. 2d 231 (1953) *with Retirement Board of Allegheny County v. McGovern,* 316 Pa. 161, 169, 174 Atl. 400 (1934), and *compare* both of these *with Hickey v. Pittsburgh Pension Board,* 378 Pa. 300, 304, 311, 106 A. 2d 233 (1954). We believe that it is appropriate at this time to review briefly the development of the Pennsylvania pension law, since the nature and time of acquisition of rights of employes in governmental retirement systems are said to be confused and uncertain. See Annotation, 52 A.L.R. 2nd 437, 475 (1957).

In the leading case of *Retirement Board of Allegheny County v. McGovern,* 316 Pa. 161, 174 Atl. 400 (1934), we declared that an employe's right to a pension under a retirement act is constitutionally protected against subsequent alteration by the legislature once the employe fulfills the conditions prerequisite to the receipt of retirement pay. In that case the plaintiff Retirement Board sought a writ of mandamus to compel the Commissioners of Allegheny County to contribute to the county pension fund. By way of defense the commissioners challenged the constitutionality of the Retirement Act of May 2, 1929, P. L. 1278, the then current law, and the earlier retirement statutes. In answering the defendants' objections, Mr. Justice KEPHART, speaking for this Court said: "Retirement pay is defined as 'adjusted compensation' presently earned, which, with contributions from employees, is payable in the future. The compensation is earned in the present, payable in the future to an employee, provided he possesses the qualifications required by the act, and complies with the terms, conditions, and regulations imposed on the receipt of retirement pay. Until an employee has earned his retirement pay, or until the time arrives when he may retire, his retirement pay is but an inchoate right; but when the conditions

are satisfied, at that time retirement pay becomes a vested right of which the person entitled thereto cannot be deprived: it has ripened into a full contractual obligation." 316 Pa. at 169. The Court held further that until an employe had fulfilled all of the prerequisites to receiving a pension, the legislature, at least in order to protect and maintain the actuarial soundness of the retirement fund, might exercise a power impliedly reserved to alter the contract of employment and retirement.

". . . [U]nderlying all retirement systems of the class we are now discussing, is the legislative object, as well as that of the member employee, that a substantial reserve be built up so that the actuarial soundness of the plan cannot be questioned. This factor is an important one in the relation between state, city and county, as employer, and the employee member, with respect to retirement pay. If a direct attack on it, such as has been made in the present case, is justified, or a weakness in it manifested through actual trial is found to exist, the remedy or relief rests clearly within the relation between employer and employee contemplated by the legislative system for retirement pay. The legislature may from time to time, within the confines of that established relation, alter, change, amend, and render intact the actuarial soundness of the system so as to strengthen its fibers in any way it sees fit. *Changes and details, such as length of service required, contributions needed, and age requirements, to keep the fund on sound actuarial practices, are essential.* Flexibility in component parts is a paramount necessity to guard against changed conditions and to permit keeping abreast with actuarial science. The basis is contribution from the county or state and from employee members." 316 Pa. at 175-176 (Emphasis supplied). The right of the legislature to amend

unilaterally an executory employment and pension contract so as to protect the solvency of a retirement fund is both a wise and a necessary power. A moment's reflection will indicate that all members of a retirement system—whether actually receiving pension payments, eligible to receive payments, or in the process of completing the requirements necessary to receive them—benefit from the maintenance of an actuarially sound retirement fund. By maintaining the fund solvent, all gain; if the fund is neglected and becomes bankrupt, all suffer. The rule of the *McGovern* case therefore, has been followed in subsequent decisions of this Court.[1]

So, in *McBride v. Allegheny County Retirement Board,* 330 Pa. 402, 199 Atl. 130 (1938) plaintiff filed a petition for mandamus to compel the Board to resume payment of the retirement allowance to which he had become entitled under the relevant retirement acts in force during his employment with the county. The Board attempted to justify its suspension of retirement payments to the petitioner on the ground that he was currently employed by the Commonwealth, and that the Board was given the authority to suspend retirement pay in such circumstances by the then current pension law which was enacted after petitioner had become eligible for retirement. In affirming judgment for the petitioner we said: "An employee fulfilling these conditions [imposed upon the receipt of retirement pay] then has a vested interest in retirement pay which cannot be destroyed, weakened or departed

---

[1] The principles set forth in the *McGovern* decision are also determinative of the rights of employes in private pension systems. See *David v. Veitscher Magnesitwerke Actien Gesellschaft,* 348 Pa. 335, 342-343, 346, 35 A. 2d 346 (1944) ; Cf. *Linaka v. Firemen's Pension Fund of Philadelphia,* 346 Pa. 459, 31 A. 2d 122 (1943) ; *Marshall v. Pilots Assn.,* 206 Pa. 182, 55 Atl. 916 (1903).

from by subsequent legislation. Neither dismissal from service or office, nor any involuntary removal can affect this vested right to retirement pay. We endeavored to specifically hold in the *McGovern* case that eligibility for retirement pay is complete as soon as an employee or member of the retirement system has satisfied the conditions requisite for retirement, *whether the employee chooses to retire immediately or to continue in active service.* His rights to such pay are fixed as of the time he attained eligibility. Until retirement pay is earned as above described the right is inchoate. During this period retirement pay is being built up. The inchoate right becomes a complete vested right when the conditions connected with the particular retirement system are complied with. This right cannot be thereafter disturbed by legislation. We reiterated this thought in the Teachers' Tenure Act Cases, 329 Pa. 213," 330 Pa. at 405-406. Accord: *Kane v. Policemen's Relief and Pension Fund of Pittsburgh,* 336 Pa. 540, 9 A. 2d 739 (1939) ; *Bausewine v. Philadelphia Police Pension Fund Assn.,* 337 Pa. 267, 10 A. 2d 446 (1939) ; *Kreinbihl v. Philadelphia Police Pension Fund Assn.,* 340 Pa. 347, 17 A. 2d 336 (1941).

Thus, the rule developed by these cases was that the legislature could not alter the terms of a pension contract without the consent of an employe after he had satisfied the conditions for receiving a pension, but prior to an employe's fulfillment of such conditions the legislature could change or add to these conditions when such changes enhanced the actuarial soundness of the fund. The question whether the legislature could also add qualifications not related to actuarial soundness so as to affect employes prior to their eligibility for retirement was specifically left open: "The validity of . . . [the amendment authorizing the Retirement Board to suspend payment of retirement al-

lowances to members of the system who take employment with the government of the United States or of the Commonwealth] as applied prospectively to one becoming eligible for retirement in the future, is not here decided. That question will be disposed of when a competent case arises." *McBride v. Allegheny County Retirement Board,* supra, 330 Pa. at 411. The "competent case" was *Baker v. Retirement Board of Allegheny County,* 374 Pa. 165, 97 A. 2d 231 (1953). In 1928 plaintiff Baker having completed twenty years service as an employe of the City of Pittsburgh received the pension due him from the Police Pension Fund Association. In the same year Baker became an employe of the County of Allegheny and until his retirement in 1952 made regular payments into the County Retirement Fund. His request for the county retirement allowance was denied by the defendant Retirement Board under the authority of the Act of March 31, 1937, P. L. 191, which provided that a person who at the time of his employment with the county was receiving a retirement allowance from another sub-division of the Commonwealth was ineligible to receive a retirement allowance from the County Retirement System. This Court, in an opinion by Mr. Justice MUSMANNO, determined that the 1937 amendment was not designed to enhance the actuarial soundness of the fund, hence, the amendment enacted after Baker had become a county employe and had begun his payments into the retirement fund could not act as a bar to his right to receive a retirement allowance. "When the legislation in question was passed, appellee already had been a member of, and had contributed to, the County retirement fund for approximately nine years. He made these contributions on the basis of the existing rules, regulations and provisions for eligibility for retirement allowance. *As of the time he joined the fund,*

*his right to continued membership therein, under the
same rules and regulations existing at the time of his
employment, was complete and vested. The legislature
could not thereafter constitutionally alter the provi-
sions of his already existing contract of membership.
His rights in the fund could only be changed by mu-
tual consent . . . ."* 374 Pa. at 168-169. (Emphasis
supplied).

The distinction between provisions relating to the
solvency of a retirement fund and provisions unrelated
thereto was again pointed out in the subsequent case
of *Hickey v. Pittsburgh Pension Board,* 378 Pa. 300,
106 A. 2d 233 (1954), in which the holding of the
*Baker* case was approved. In *Hickey* the petitioner,
an employe of the City of Pittsburgh, had completed
twenty years of service with the city and paid certain
sums into the Pittsburgh Pension Fund and was there-
fore qualified under the Pension Act of May 28, 1915,
P. L. 596 to receive a pension payable at age sixty. In
1947 the petitioner having reached his sixtieth birthday
retired from the city and received pension payments.
But when, in 1952, the petitioner obtained employment
with the County of Allegheny, the City Pension Board
discontinued the payments under the authority of the
Act of April .26, 1933, P. L. 81 which provided that if
a pensioner of the City of Pittsburgh became employed
by Allegheny County, the City Pension Board was em-
powered to suspend retirement payments to the pen-
sioner during the period of such employment. We
said that this "interdiction in the Act of 1933 is not
so much a suspension of pension rights as it is a re-
striction on the right of employment. The Act says
in effect that Hickey will receive what he is entitled
to receive and what he has paid for, provided he does
not work for Allegheny County. But the Legislature
has no right to say this. It can no more bar Hickey

from working for the County than it can bar him from working for the United States Steel Company, or from running a grocery store, or from taking a trip to Europe, or running for political office." 378 Pa. at 308. We then took the occasion to reaffirm the holding of the *Baker* case by stating that as of the time Hickey joined the retirement system he acquired certain contractual rights, 378 Pa. 304; while the legislature without breaking the bonds of these contractual obligations might strengthen the actuarial fibers of the system by changing relevant conditions prerequisite to receiving the retirement allowance, 378 Pa. at 309, it could not impose restrictions upon an employe's pension rights which were not related to maintaining the actuarial integrity of the retirement fund once the employe became a member of the retirement system. See also *Wright v. Retirement Board of Allegheny County*, 390 Pa. 75, 134 A. 2d 231 (1957) (Rule approved); *Jameson v. Pittsburgh*, 381 Pa. 366, 369, 113 A. 2d 454 (1955) (Rule approved); *Mauch v. Allegheny County Retirement Board*, 381 Pa. 492, 113 A. 2d 230 (1955) (Act effective prior to employe's eligibility for retirement and conditioning such eligibility upon employe not being entitled to receive other public pensions held inapplicable to such employe).

We may thus summarize the law relating to the rights of a public employe in a retirement system as follows:

1. An employe who has complied with all conditions necessary to receive a retirement allowance cannot be affected adversely by subsequent legislation which changes the terms of the retirement contract.

2. An employe who has not attained eligibility to receive a retirement allowance may be subject to legislation which changes the terms of the retirement con-

tract if the change is a reasonable enhancement of the actuarial soundness of the retirement fund.

3. An employe who has not attained eligibility to receive a retirement allowance may not be subject to legislation which changes the terms of the retirement contract if the change does not reasonably enhance the actuarial soundness of the retirement fund.[2]

Applying these principles to the present case it follows that Harvey is subject to the requirements of the Retirement Act of 1933. This statute increased the retirement age from fifty to sixty years except that employes who had been separated from the service by reason of no cause or act of their own might retire with full benefits at age fifty. Since an increase in retirement age is related to maintaining the actuarial sound-

---

[2] The majority of states have adopted the position that public employes have no unalterable rights until all requirements for receiving retirement allowances have been satisfied. See Annotation, 52 A.L.R. 2d 437 (1957). However, the more recent decisions recognize that an employe obtains certain rights at the time he joins the retirement system which cannot thereafter be changed without his consent. In California the rule is that a public employe receives the right to a substantial and reasonable pension under the terms of the retirement act in force at the time of his employment subject to subsequent legislation modifying his rights if such acts bear a material relationship to the theory of a pension system and its successful operation, and result in new advantages to employes which offset any disadvantages imposed. *Allen v. Long Beach*, 45 Cal. 2d 128, 387 P. 2d 765, 767 (1955). See also *Bakenhus v. Seattle*, 48 Wash. 2d 695, 296 P. 2d 536, 540 (1956) (". . . pension rights may be modified prior to retirement, but only for the purpose of keeping the pension system flexible and maintaining its integrity.") ; *Crawford v. Teachers' Retirement Fund Assn.*, 164 Ore. 77, 99 P. 2d 729 (1940) (prior to the fulfillment of all prerequisites to eligibility for retirement, an employe's rights in a retirement fund are of an inchoate nature and subject to changes in the regulation of the fund necessary for the betterment thereof).

ness of a pension fund, see *Retirement Board of Allegheny County v. McGovern*, supra, 316 Pa. at 176, this provision of the Act of 1933 applied to all employes who, on the effective date of the act, had not attained eligibility to receive a retirement allowance.

By agreement of the parties the court below did not pass upon Harvey's contention that his discharge was not for cause, and that, therefore, even under the Act of 1947 he was presently entitled to a pension. We will therefore remand this case to the court below for determination of this question.

The judgment of the Court of Common Pleas of Allegheny County is reversed and the record remitted for further proceedings not inconsistent with this opinion. Costs to be paid by the Retirement Board of Allegheny County.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I would affirm the judgment entered in favor of the plaintiff in the lower court, on the able opinion of Judge LORAN LEWIS of the Court of Common Pleas of Allegheny County.