State Employes' Retirement Board *v.*
Adam T. Bower.

Argued January 20, 1971, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

.· *Robert E. Woodside*, with him *Woodside, Woodside & Zwally*, for appellant. ·

*Raymond Kleiman*, Deputy Attorney General, with him *Fred Speaker*, Attorney General, for appellee.

·· OPINION BY JUDGE WILKINSON, March 24, 1971:

On January 7, 1969, at the age of 64, Adam T. Bower, appellant, retired as a state employee after serving in the House of Representatives from 1939 to 1966, inclusive, and as chief clerk of the House of Representatives in 1967 and 1968. He qualified as a state employee under the State Employes' Retirement System and received credit for two years' service as a member of class A and 28 years' service as a member of class D.

On retirement, appellant was confronted with a choice among several options as set forth in the State Employes' Retirement Code of 1959 in section 404, entitled "Members' Options." Act of June 1, 1959, P. L. 392, as amended, 71 P.S. 1725-404. He determined that the "present value" of his retirement, calculated as of that time, was $256,300. The "present value" is placed in quotation marks since this is a calculation made by the State Employes' Retirement Board before applying the limitation of section 401(1) (d.3) added to the Act

of 1959 by amendment: "Except in the case of any member who has served as a constitutional officer of the General Assembly, the total superannuation retirement allowance payable to a member of Class D-3, after election of an option, as provided in section 404, shall not exceed twelve thousand dollars (12,000) per year." Act of July 29, 1965, P. L. 264, 71 P.S. 1725-401(1) (d.3).

He determined further that if he chose option 2, whereby he would receive an annuity for life and on his death, his wife, if she survived, would receive the same annuity for her life, he and she would receive $1,152.96 per month. This was the maximum he could receive after giving weight to the $12,000 limitation on the benefits accruing as a result of his years in the legislature. The present value of such an annuity was determined to be $163,544. It is the loss of this difference, or $92,756, that gives rise to this appeal.

The Board, acting on the advice of the Attorney General, declined to pay appellant the $92,756 as a lump sum or in any other form. Appellant contests this decision as being (1) an improper interpretation of section 401(1) (d.3) and section 404, and (2) unconstitutional if applied to him since he was eligible to retire prior to the passage of the Act of June 29, 1965. We cannot agree with appellant's position and must affirm the decision of the State Employes' Retirement Board.

It is our opinion that the proper interpretation of the Retirement Code is that no lump sum payment can be made to any retiring member other than a lump sum equal to his accumulated deductions standing in his individual credit in the member's annuity savings account. If he elects this lump sum, he would thereby forego his right to an annuity or a retirement allowance payable throughout life according to any of the option plans. As a practical matter, this was really no choice

in appellant's instance, for his accumulated deductions plus interest at four percent amounted to only $18,-888.99, whereas, even under the Board's interpretation, he was entitled to an annuity worth $163,544 to be received at the rate of $1,152.96 per month if payable to him or to his wife if she survived him.

The history, basic philosophy, and law with regard to governmental retirement systems in the United States have been collected and presented in 52 A.L.R. 2d 457 (1957). The Pennsylvania law was collected, interpreted, and summarized by the late Justice COHEN in *Harvey v. Allegheny Co. Retirement Board,* 392 Pa. 421, 141 A. 2d 197 (1958). This was followed by *Geary v. Allegheny County Retirement Board,* 426 Pa. 254, 231 A. 2d 743 (1967), wherein the previous legal principles were restated but there was disagreement on the court as to their application to the facts, with Justice ROBERTS speaking for the court and Justice COHEN dissenting without opinion. Finally, the most recent case in this general area is that of *Scott v. Allegheny County Board of Retirement,* 439 Pa. 249, 266 A. 2d 644 (1970).

In arriving at our conclusion that the State Employes' Retirement Code of 1959, as amended, does not authorize a lump sum payment to any retiring member of the State Employes' Retirement System, other than the return of the amount the member paid in with interest, we have examined the entire Act and its history. At various places in the Act, and specifically in section 404(1)(c) here involved, the Act refers to amounts "payable throughout life." Where lump sum payments can be made, they are specifically provided for on the death of the member or retiree, or his election to withdraw his payments. In 1965 an effort was made to obtain the right for a retiree to elect a lump sum payment when an amendment making such a provision was

passed by the House of Representatives and the Senate. S. B. 383, 1965 Legislative Session; Section 5(404) (1) (c). However, the amendment was vetoed by Governor Scranton on February 3, 1966. Veto No. 29, History of the House 1965. Had the legislature not interpreted the Act to prohibit a lump sum payment, no such amendment would have been necessary. Certainly if the governor had felt that it was only a clarification of a pre-existing right, there would have been no occasion for a veto.

We do not agree with appellant's position that option 4 provides for such a choice. Appellant argues that the code previously contained a provision requiring Board approval of the plan selected and that this Board approval was removed by amendment, thereby opening the way for a lump sum payment. If that amendment had intended to permit lump sum selections previously unauthorized, it would have been simple enough to put such a permissive provision in the Act as was done in the same section under option 1 (iii) wherein a beneficiary, on the death of a member, is permitted to select "(iii) A lump sum payment and an annuity. Such annuity shall have a present value equal to the balance payable less the amount of the lump sum payment specified by the beneficiary." Act of July 29, 1965, P. L. 264, §19; Act of July 31, 1968, P. L. , No. 230, §24, 71 P.S. 1725-404(1) (c) (Option 1).

Appellant argues that the limitation of $12,000 placed by the Act of July 29, 1965, P. L. 264, §13, 71 P.S. 1725-401(1) (d.3), on the total superannuation retirement allowance payable to a member of class D-3 cannot constitutionally be applied to him under the principles set forth in *Harvey v. Allegheny County Retirement Board*, 392 Pa. 421, 141 A. 2d 197 (1938), and *Scott v. Allegheny County Retirement Board*, 439 Pa. 249, 266 A. 2d 644 (1970), since at the time it was enacted, he was eligible to retire.

This position of appellant is entirely without merit. What were the limitations placed on appellant that were in existence in 1965 prior to the enactment of this limitation? Prior to the Act of 1965, which created class D-3, legislators were permitted to join class D, class D-1, or class D-2. The highest benefits payable to a legislator, which is all appellant had been prior to 1965, was five percent (5%) for each year of legislative service, *but not exceeding one hundred percent (100%) of his final average salary.* Indeed, prior to *Geary v. Allegheny County Retirement Board,* 426 Pa. 254, 231 A. 2d 743 (1967), appellant's rights could be neither increased nor decreased after he became eligible to retire. In that event, the limitation or restriction applied to him would have required a payment of less than $12,000. Therefore, the new "limitation" of $12,-000 a year retirement benefits placed on legislators, other than those legislators who are constitutional officers, was not an unconstitutional additional limitation placed on appellant. On the contrary, it was a proper and substantial increase in benefits and removed a less valid, much more restrictive limitation.

The other arguments of appellant are equally without merit. The elimination of the constitutional officers of the legislature from this limitation is a proper classification since their salaries are quite different from other legislators. Of course, we agree with appellant's position that retirement benefits are not gratuities passed out to retiring members from the largesse of the employer. Retirement benefits are earned by the employee during the period of his employment under all the terms, provisions, and limitations of the employment contract. In Pennsylvania, the legislators are treated separately and quite properly so. Their contributions are at the highest rate of any members in the retirement system. Unlike other members, they have a

choice as to whether to enter the system. Especially with regard to members of the House of Representatives who must stand for election every two years, their tenure is more precarious. In many instances, such as are here presented, the benefits might seem disproportionately high. Appellant and his wife will receive for the rest of their lives as retirement substantially more annually than was his salary for 28 years as a legislator. This can happen with regard to other members in the system. On the other hand, situations can arise or be envisioned where the benefits under this restriction would be less than would be expected. All of these results stem from the "contract of employment," i.e., the provisions of the retirement system in effect during the employment subject to modification and improvement only under the provisions of the law as set forth in the acts and as interpreted by the Supreme Court of Pennsylvania. The restriction on the benefits due legislators, as set forth in the Act of 1965, was obviously established by the legislators themselves. Indeed, the appellant was one of the sponsors of the Act.

Accordingly, the adjudication of the State Employes' Retirement Board, made on the petition of appellant, is affirmed.