512 A.2d 1175

The CITY OF ALLENTOWN, Appellant,

v.

LOCAL 302, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, et al., Appellees.

Supreme Court of Pennsylvania.

Argued Oct. 22, 1985.

Decided July 23, 1986.

Richard DiSalle, Washington, Joseph L. Rosenfeld, City Solicitor, and Jack I. Kaufman, Asst. City Solicitor, Allentown, for appellant.

Ronald Lucas, Harrisburg, for amicus Pa. League of Cities.

Nicholas J. Marcucci, Harrisburg, for amicus Municipal Retirement Systems.

Stephen C. Richman, Philadelphia, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

ZAPPALA, Justice.

The Commonwealth Court has determined that under the Pennsylvania Municipal Retirement Law, 53 P.S. §§ 881.-101–881.501, a municipality may not maintain more than one pension system for its firemen. Consequently, the court held invalid the actions of the Appellant, City of Allentown, closing enrollment in the City's Paid Firemen's Pension Fund (Pension Fund) as of July 8, 1976 and mandating enrollment of all firemen hired after that date in the Pennsylvania Municipal Retirement System (Retirement System). Because of the importance of the question for municipalities throughout the Commonwealth, we granted allocatur to review this interpretation of the statute.

In 1969 the City of Allentown passed Ordinance No. 11576 establishing the Paid Firemen's Pension Fund. Subsequent collective bargaining agreements between the City and Local 302 of the International Association of Firefighters, including the agreement in effect between January 1, 1976 and December 31, 1977, made reference to this Pension Fund. In 1976, with the passage of Ordinance No. 12185, the City closed membership in the Pension Fund and elected to join the Retirement System established by the Pennsylvania Municipal Retirement Law, Act of February 1, 1974, P.L. 34, No. 15, 53 P.S. §§ 881.101–881.501. As a result of this act all firemen hired after June 8, 1976 were ineligible for membership in the Pension Fund and were required to participate in the Retirement System.

This action was commenced on July 27, 1977 with the filing of a Petition for Review in the Commonwealth Court. The Appellees Roxberry, Sell, and Klechner, three firemen hired after the effective date of Ordinance No. 12185, and Local 302, their union, sought an order declaring the Ordinance invalid, construing the collective bargaining agree-

ment so as to require the City to enroll all firefighters, including those hired after June 8, 1976 in the Pension Fund, and enjoining the Pennsylvania Municipal Retirement Board from accepting further contributions for the Retirement System on their behalf. Resort to the grievance procedure provided for in the collective bargaining agreement was waived by the parties. Commonwealth Court determined that it had neither original nor appellate jurisdiction and transferred the case to the Court of Common Pleas of Lehigh County. That court dismissed the action against the Board for lack of jurisdiction. Having received a stipulation of facts and cross-motions for summary judgment, the court determined that the City's actions did not violate the contractual rights of the Union or its individual members. The court also held that the Pennsylvania Municipal Retirement Law permitted the City to maintain the local Pension Fund for those firemen enrolled prior to June 8, 1976, and join the Retirement System for all firemen hired after that date. Because of the absence of any factual dispute, the court granted the City's motion for summary judgment and denied the summary judgment motion of the Petitioners/Appellees. As previously noted, the Commonwealth Court reversed based on a contrary reading of the statute.

■ The Pennsylvania Municipal Retirement Law provides in part:

§ 881.303. **Existing local retirement systems and compulsory membership.**

Where a municipality elects to join the system established by this act, and is then maintaining a retirement or pension system or systems covering its employes in whole or in part, those employes so covered, and employes thereafter eligible to join such pension system, shall not become members of the retirement system established by this act, unless at the time the municipality elects to join the system, the members of each such existing retirement or pension system shall, by the affirmative vote of seventy-five per cent of all the members of each pension

system, elect to be covered by the retirement system established by this act. At any time thereafter, within a period of three years after the municipality has elected to join the system, but not thereafter, the members of an existing retirement or pension system may, in like manner, elect to join the system established by this act....

No liability, on account of retirement allowances or pensions being paid from any retirement or pension fund of the municipality, shall attach against the fund, except as provided in the agreement, making a transfer of an existing system in accordance with this section. The liability to continue payment of pensions not so transferred shall attach against the municipality, which shall annually make appropriations from its tax revenues sufficient to pay the same. In cases where workers covered by an existing retirement or pension system elect to join the system created by this act, the election to join shall be deemed to have been made at the time the municipality elected to join the system, and the liabilities of the municipality shall be fixed accordingly.

If a municipality elects to cover its municipal firemen under the provisions of the system created by this Article III, then each municipal fireman shall be required to become a member of the system.

If a municipality elects to cover its municipal police under the provisions of the system created by this Article III, then each municipal policeman shall be required to become a member of the system.

.... Notwithstanding any other provision herein, the board may, in its discretion, entertain a request from a municipality to join the system established by this act for those employes who are excluded from local pension plan coverage by virtue of the collective bargaining process or otherwise. The request to join the system must be accompanied by an affirmative vote of no less than three-fourths of those employes not covered by the local pension plan. The benefits to be established may be in accordance with the provisions of this article or any other

relevant pension law covering that class of municipality. The other requirements of this section for joining the system shall be observed.

The foundation of the Commonwealth Court's analysis is the third paragraph of this section. The court read this language to mean that under no circumstances could two retirement systems exist for municipal firemen; either all firemen would be required to be covered by the Retirement System or none of the firemen could be so covered. Finding that this section is "clear and can be interpreted in only one manner," the court applied the rule of statutory construction which holds that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit," 1 Pa.C.S. § 1921(b), and concluded that the City's Ordinance attempting to enroll only new firemen in the Retirement System was invalid. Given this interpretation of paragraph three, the court's implicit understanding of the first paragraph was that a municipality's decision to join the Retirement System could not become effective without an affirmative vote of seventy-five per cent of the members of the existing pension fund. Maj.op. at p. 278–279.

The City argues that the Commonwealth Court erred by interpreting the third paragraph of Section 881.303 in a way which conflicts with other provisions of the statute when an interpretation avoiding conflict and giving effect to all provisions is available. *See* 1 Pa.C.S. § 1921(a). The City reads the first and final paragraphs of the Section as indicating statutory approval of the existence of more than one pension plan for firemen. The first sentence is read as simply providing the means by which an existing plan might be joined into the Retirement System after the municipality has elected to enroll other employees in the Retirement System; the seventy-five per cent vote is understood as an affirmative act unrelated to the municipal decision, not as a veto power over that decision. The last paragraph, according to the City, contains language demonstrating an even clearer legislative approval of dual pension systems. "Not-

withstanding any other provision herein, the board may, in its discretion, entertain a request from a municipality to join the system established by this act *for those employees who are excluded from local pension plan coverage* by virtue of the collective bargaining process *or otherwise."* 53 P.S. § 881.303 (emphasis added). This language, added to the Act as an amendment in 1980, is argued to manifestly require the conclusion that two separate pension plans may exist, one local and the other the Retirement System for persons excluded from the local system.

Proceeding from these premises the City argues that the third paragraph of Section 881.303, if it is to be given meaning, as it must, should be read as imposing compulsory membership in the Retirement System on only those firefighters for whom the City elects to join the Retirement System. Because the Ordinance enrolls firefighters hired after its effective date, only those firefighters are required to become members of the Retirement System. Such firefighters are "excluded from local pension plan coverage" because of the Ordinance and are therefore candidates for enrollment in the Retirement System under the final paragraph of the Section. They are likewise not "eligible to join" the local pension system and therefore are not precluded from joining the Retirement System by the first paragraph. Compulsory membership co-extensive with the municipality's election to enroll employees, not universal membership for all employees of the enrolled class, is said to be the proper interpretation of the third paragraph.

In support of this reading of the statute, the City offers the regulations of the Pennsylvania Municipal Retirement Board. In 1976 the Board adopted regulations to implement the Act, including the following general provision from Chapter 81:

§ 81.6. **Election by municipalities to join retirement system.**

Even though employes, who are present members of an existing local retirement system, choose not to join the System, *a municipality may nevertheless enroll based*

*on the plan elected to cover employees of the munici-
pality employed after the effective date of enrollment
in the System.* In such case, members of the existing
local retirement plan may join the plan established under
the law, within three years after enrollment in this Sys-
tem, but not thereafter, by a vote of 75% of the members
of such existing local plan,

and, from Chapter 85 dealing with Municipal Firemen and
Municipal Police, this regulation:

**§ 85.3. Existing local retirement systems and compul-
sory membership.**

(a) Except as it provides existing [sic] pension plans to
join the System under this Part, the *provisions of § 81.6
of this Title* (relating to election by municipalities to join
retirement system), § 81.12 of this Title (relating to exist-
ing local retirement systems), and 83.3 (relating to exist-
ing local retirement systems and compulsory and optional
membership) *shall be equally applicable to this section.*

(b) In those cases where a municipality elects to cover
its member police or firemen, as the case may be, each
such employee shall be required to become a member of
the System under Article III or Article IV of the law, (53,
P.S. §§ 881.301–881.413 or §§ 881.401–881.413) as herein-
after provided in this Chapter.

16 Pa.Admin.Code §§ 81.6, 85.3 (emphasis added). The City
notes that in addition to the deference which courts are
bound to give to an agency's interpretation of its own
regulations, *Commonwealth of Pennsylvania, Depart-
ment of Public Welfare v. Forbes Health System,* 492 Pa.
77, 422 A.2d 480 (1980), the General Assembly has given
implicit approval to this construction of the statute by
amending the Act subsequent to adoption of the regulations
while leaving the administrative interpretation undisturbed.
*See Hospital Association of Pennsylvania v. MacLeod,* 487
Pa. 516, 523, n. 10, 410 A.2d 731, 734, n. 10 (1980); *See also,*
1 Pa.C.S. § 1921(c)(8).

The root of the present controversy is the language of the
statute, a patchwork of provisions, some new and some old,

assembled without apparent regard for the effect of retaining certain sections while abandoning related sections, and adding new language without adequate explanation of its relation to language retained. In a sense, both parties to this dispute are correct. The language of the third paragraph, viewed in isolation, provides a seemingly clear indication that membership in the Retirement System is compulsory for *all* firefighters if the municipality elects to join the system for its firefighters. Comparison with the parallel language of Section 881.203 regarding compulsory membership for nonuniformed employees strengthens this interpretation. "If a municipality elects to join the system under the provisions of this Article II, then each officer other than elected officers, and each employe thereof other than a municipal fireman and a municipal policeman, employed on a permanent basis, except one who is not eligible for Federal Social Security coverage *and except one who is covered by an existing retirement or pension system and is exempted as outlined above,* shall be required to become a member of the system." 53 P.S. § 881.203 (emphasis added). The existence of this *explicit* exception to compulsory Retirement System membership for members of existing pension systems weighs against reading a similar *implicit* exception into Section 303.

It is troublesome, however, that this construction requires that the first sentence of Section 303 be read as empowering the members of the existing pension fund to approve or disapprove the municipality's election to join the Retirement System. Such a power was explicitly granted under the former law applicable to police [1] but the language

---

1. The Municipal Police Retirement Law, Act of July 31, 1968, P.L. 944, No. 291, established a police pension system administered on a statewide basis by the Board charged with overseeing the pension system established for other municipal employees by the Municipal Employees Retirement Law, Act of June 4, 1943, P.L. 886, as amended. These pension systems were the predecessors of the Retirement System created by the Pennsylvania Municipal Retirement Law. The Paid Firemen's Pension Fund created by Ordinance No. 11576 in 1969 was adopted pursuant to the Act of June 23, 1931, P.L. 932, art. XLIII, § 4301, as amended, 53 P.S. § 39320. In addition to requiring third

granting this power was not retained under the Act. Section 790.6 of Title 53 provided that "[a]ny municipality may elect, by ordinance or resolution, to join the [police] retirement system created by this act: Provided, however, That when a municipality is maintaining an existing retirement or pension system for its police, the ordinance shall not affect membership in the retirement system created by this act *unless and until approval is voted* by seventy-five percent of _____ the membership of the existing pension or retirement system *as provided for in section 15* of this act." (Emphasis added) Section 15 of the act contained the identical provisions now found in Section 303. Following the rules of construction that "the intention of the General Assembly may be ascertained by considering, among other matters ... [t]he former law, if any, including other statutes upon the same or similar subjects" 1 Pa.C.S. § 1921(c)(5), and that a change in language is ordinarily to be considered as expressing a change in intention, it would appear that approval by the existing pension system was no longer intended to be necessary to give effect to the municipality's decision to join the Retirement System. This conclusion is strengthened by reference to Section 113 of the present Act, 53 P.S. § 881.113, setting out the General Provisions governing the Retirement System. There, the only proviso attached to a decision to join the system is placement of employees under the Federal Social Security Act to the full extent of their eligibility. Other than this requirement, the municipality's election is apparently unconditional.

It is regrettable when because of imprecise drafting of legislation the policy-making function entrusted to the General Assembly is wielded *de facto* by administrative agen-

class cities to establish a pension fund for policemen. Whether or not the City was still *statutorily required* to maintain any pension fund for police or firemen hired after adoption of its optional charter pursuant to the Optional Third Class City Charter Law, Act of July 15, 1957, P.L. 901, 53 P.S. § 41101 et seq., the provisions of the Pension Fund established under Act 932 of 1931 were in effect as to all firemen at the time Ordinance No. 12185 was adopted, giving rise to this litigation.

cies and ultimately devolves upon the courts to be exercised in the context of the circumstances peculiar to an individual case; it is regrettable but, for in the present case, unavoidable.

As the foregoing discussion indicates, we do not agree with the Commonwealth Court that Section 303, when read in its entirety, is "clear and can be interpreted in only one manner." The interpretation settled on by the Commonwealth Court, based on a strict reading of the third paragraph, requires that a "veto power" in favor of existing pension funds be implied in the first paragraph although it is not written in the statutory language. Alternatively the Appellant's interpretation, based on a strict reading of the first paragraph (and supported by a later amendment contained in the final paragraph), requires that a limitation on the compulsory membership provision be implied, although it is not written in the statutory language. In view of the overall scheme of the Act, whereby a municipality's "election" to join the Retirement System is established solely as a policy decision of the governing body or of the electorate,[2] we find it preferable not to imply a limitation on this public power in favor of the private interests of existing pension funds. *See* 1 Pa.C.S. § 1922(5). Rather than give the third paragraph the same meaning it would have if read in isolation and thereby render nugatory the power of the municipality to decide on joining the Retirement System granted by another provision of the same Act, we choose to interpret this part more restrictively in order to give some meaning to each portion of the statute. *See* 1 Pa.C.S. § 1922(2). Given the administrative interpretation of the Act, the acquiesence in that interpretation implicit in the legislature's later amendment without "correcting" the regulations, and the potential consequences of interpreting the

**2.** "Any municipality, by action of its tax levying body, may *and upon petition of electors equal to at least five per cent of the registered electors of the municipality shall,* submit the question of joining such system to the voters.... If the majority of the electors voting on the question vote in favor thereof, the tax levying body *shall adopt an ordinance or resolution electing to join such system....* 53 P.S. § 881.107 (emphasis added).

Act so as to invalidate all "two-tier" pension arrangements including those agreeable to all parties, 1 Pa.C.S.A. § 1921(c)(6), we hold that Article III of the Pennsylvania Municipal Retirement Law permits a municipality to require enrollment of one group of police or firemen in the Retirement System, while leaving for vote of the members of another group—those enrolled in an existing pension fund—the decision whether or not to join the Retirement System. Accordingly, the Commonwealth Court's holding on this issue is disapproved.

■ Resolution of the statutory question, however, does not dispose of the entire matter presented. The Act provides generally the procedures whereby a municipality may elect to join the Retirement System. Among the possibilities permitted by the statute, implicitly as originally written and explicitly following the 1980 amendment, is the enrollment of employees not covered by an existing pension plan. Nothing in the language of the Act speaks to the reason why employees might not be covered by an existing plan; it is merely provided that the Board may, in its discretion, permit the municipality to enroll such employees in the Retirement System. It is a separate question, entirely unrelated to the statute, whether or not the municipality has acted properly in creating the class of non-covered employees.[3]

3. One of the arguments presented by the City was that it relied on an advisory letter from the Board approving the practice of enrolling new employees only without bringing members of an existing program into the Retirement System. This reliance argument deceptively ignores that portion of the Board's letter expressly disclaiming any opinion on whether the City was in a position to offer dissimilar benefits to one category of employee. The portion of the letter not cited by the City reads:

It is important to note that the benefits provided under Article II for nonuniformed employes may be less than those benefits you now provide for nonuniformed employes under your optional plan. *The disparity in benefits,* if they do exist, *may require a careful policy review as to whether you can offer two different pension plans with dissimilar benefits for one category of employe,* i.e., nonuniformed. *The same problem would be present for benefits you now provide separately to police and firemen and those that would be available*

As they did in the trial court, the Appellees argue here that even assuming municipalities have the general power to split a class of employees and maintain separate pension plans, the City here acted improperly in doing so unilaterally in the face of a collective bargaining agreement. With this argument we must agree.

Act 111, establishing collective bargaining by policemen or firemen, Act of June 24, 1968, P.L. 237, No. 111, 43 P.S. §§ 217.1–217.10, specifically provides that "[p]olicemen or firemen employed by a political subdivision of the Commonwealth ... shall, through labor organizations or other representatives ... have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including ... *retirement, pensions* and other benefits ...." 43 P.S. § 217.1 (emphasis added). According to the stipulation of the parties, the collective bargaining agreement in effect at the time Ordinance No. 12185 was enacted, like the predecessor agreements, made reference to the Pension Fund created by Ordinance No. 11576. Membership in that Pension Fund, by its terms, was to "apply to all regular salaried paid firemen and employees of the Fire Department of the City of Allentown, excepting the janitor or similar employee, who shall have accepted the provisions of [the] Ordinance...." Pension Plan, Section 6.00. By bargaining for and agreeing to amendments to the existing plan, the parties evidenced an intention that the plan would remain in effect for the life of the collective bargaining agreement. The unilateral decision by the City to initiate new pension terms for some members of the bargaining unit constituted a breach of the collective bargaining agreement.[4]

*under Article III* or under Article IV for these categories of employes. (Emphasis added.)

4. We find frivolous the contention that the collective bargaining agreement was applicable only to firemen already employed but could be denied application to those hired later. Any other result would render the collective bargaining process a farce. The collective bargaining agreement applies to all those who are members of the bargaining unit during the term of the agreement.

In opposition to this conclusion the City argues that previous decisions of this Court permit a public employer to alter the terms of a pension plan for those employees whose rights had not yet vested if the changes were necessary to enhance the actuarial soundness of the fund. *See, e.g., Harvey v. Allegheny County Retirement Board,* 392 Pa. 421, 141 A.2d 197 (1958); *Retirement Board of Allegheny County v. McGovern,* 316 Pa. 161, 174 A. 400 (1934). In pursuing this argument, the City fails to consider the impact of Act 111 on these decisions permitting limited alteration of pension plans by public employers. It would appear that by including retirement and pensions in the items which policemen and firemen have a right to bargain, the legislature has evidenced an intention that the public employer no longer has exclusive control over the structure of pension systems. Once the matter is included in a collective bargaining agreement, it becomes, like any other contractual provision, binding on the parties to the agreement. An implicit power reserved by the public employer to unilaterally alter a bargained for provision in the contract would render the bargaining process established by Act 111 entirely illusory. We find no warrant in the language of the Retirement Act or elsewhere to impute such an intention to the legislature. We also note that since the decision of the trial court a majority of this Court has repudiated the "actuarial enhancement" rule and held that a unilateral change in retirement benefits to non-vested members cannot pass constitutional muster under Article I, § 17, of the State Constitution, prohibiting the impairment of contracts. *Association of Pennsylvania State College and University Faculties v. State System of Higher Education,* 505 Pa. 369, 479 A.2d 962 (1984); *see also Catania v. Commonwealth, State Employees' Retirement Board,* 498 Pa. 684, 450 A.2d 1342 (1982) (court evenly divided on question of whether unilateral changes in terms or conditions of retirement contract inuring to detriment of non-vested employees violates prohibition against impariment of obligation of con-

tracts).[5] For these reasons, the City's unilateral decision to close enrollment in the Pension Fund and require new members of the bargaining unit to enroll in the Retirement System, with different obligations and benefits, constituted a breach of the collective bargaining agreement between the Union and the City.

Having found that the City breached the collective bargaining agreement, we must remand this case to the court of common pleas for determination of an appropriate remedy. In doing so, we note that much of the specific relief requested by the Appellees in their Petition for Review would appear to be inappropriate. For example, the Appellees request that the court "[e]nter a judgment ... that all employees of the City of Allentown Fire Bureau including petitioners Roxberry, Sell and Kelchner are eligible to *and shall participate* in the Paid Firemen's Pension Fund." The terms of the Pension Fund, however, clearly provide that "it shall be optional with each paid fireman and employee as to whether or not he or she accept the provisions

5. Even under the "actuarial enhancement" rule the City could not prevail in this appeal. The record is wholly inadequate to sustain the City's position. The only "evidence" remotely related to the question of the actuarial soundness of the Pension Fund is an unsworn, undated "Statement of Financial Impact" prepared by the Director of the Department of Administration and Finance. At best, this statement details the effect that a decision requiring the City to continue the Pension Fund would have on the *financial condition of the City.* It bears little, if any, relevance to the issue of the *actuarial soundness of the Pension Fund.* Further, it does not appear that this document was placed in evidence before the trial court, nor does it appear that the issue was otherwise addressed by the parties below. A review of the pleadings indicates no basis for the trial court's conclusion that the plaintiffs-appellees had failed to deny the City's allegation that the reason for passage of Ordinance No. 12185 was to arrest the pending bankruptcy of the Pension Fund. Indeed, the pleadings contain no such allegation by the City, which filed only an Answer containing no New Matter in response to the Petition for Review. Even had the issue been properly placed before the court, the question of whether the changes were necessary to preserve the actuarial integrity of the Pension Fund would be a question of fact rendering the issue inappropriate for summary judgment. Thus the court erred in accepting the representations of the City that the purpose of the Ordinance was to preserve the financial integrity of the Pension Fund, and further erred in granting summary judgment on the basis of those representations.

of this Ordinance." Pension Plan, Section 6.00. We caution the court that the remedy fashioned, whether equitable or monetary, must be appropriate to the violation found, that is, a breach of the collective bargaining agreement, not a violation of pension rights.

The order of the Commonwealth Court is vacated and the record is remanded to the Court of Common Pleas of Lehigh County for further proceedings in conformity with this Opinion.

PAPADAKOS, J., did not participate in the consideration or decision of this case.

LARSEN, J., filed a concurring opinion.

LARSEN, Justice, concurring.

I concur in the result based on the Commonwealth Court Opinion in this case authored by Judge Francis A. Barry. That opinion is attached to this concurring opinion as Appendix A.

### APPENDIX A

LOCAL 302, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS et al., Appellants,

v.

THE CITY OF ALLENTOWN et al. and PENNSYLVANIA MUNICIPAL RETIREMENT BOARD et al., Appellees.

No. 1569 C.D. 1982.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 6, 1984.

Decided Sept. 6, 1984.

Before WILLIAMS, BARRY and BLATT, JJ.

### MEMORANDUM OPINION

BARRY, Judge.

This appeal results from an order of the Court of Common Pleas of Lehigh County which granted a motion for summary judgment filed by the City of Allentown (City) and dismissed a cause of action filed by Local 302, International Association of Fire Fighters, the collective bargaining representative for the City's firefighters and Michael Roxbury, Daniel Sell and Glen Kelchner, individual City firefighters.

Certain facts were established by stipulation of the parties in October of 1978. In 1969, the City, by ordinance, established the Paid Fireman's Pension Fund (Pension Fund). In 1976, the City, again by ordinance, amended the ordinance establishing the Pension Fund and elected to join the Pennsylvania Municipal Retirement System (Retirement System) which had been established by the Pennsylvania Municipal Retirement Law, Act of February 1, 1974, P.L. 34, 53 P.S. §§ 881.101–881.501 (Supp.1984–85). According to the amendment, the City would enroll all firefighters hired after June 8, 1976, in the Retirement System, allowing all previously hired firefighters to remain in the Pension Fund. The Retirement System and the Pension Fund differ on both benefits and contributions.

The individual firefighters and their union then filed a petition for review in this Court, naming as respondents, in addition to the City, the Pennsylvania Municipal Retirement Board (Board) and certain members of the Board. The firefighters sought an order declaring invalid the 1976 ordinance requiring all firefighters hired after June 8, 1976, to join the Retirement System; they also sought an order directing the City to enroll all firefighters in the Pension Fund. Finally, the firefighters sought to enjoin the Board from accepting contributions from the City on behalf of the newest firefighters.

After the October, 1978 stipulation of all material facts had been filed, both sides filed cross-motions for summary judgment. Following oral arguments, this Court transferred the case to the Court of Common Pleas of Lehigh County, holding we had neither appellate jurisdiction as the Board had not entered any final order nor original jurisdic-

tion because the Board and the named individual members were not indispensible parties. *Local 302, International Association of Fire Fighters v. City of Allentown,* 55 Pa. Commonwealth Ct. 599, 423 A.2d 1119 (1980).

Following the transfer to the Court of Common Pleas of Lehigh County, the parties again proceeded on the stipulation of facts and cross-motions for summary judgment. The trial court granted the City's motion for summary judgment and this appeal followed.

Appellant's argue, inter alia, that the trial court erred in holding that the Pennsylvania Municipal Retirement Law permits the existence of two separate retirement plans for the City firefighters. Section 303 of the Pennsylvania Municipal Retirement Law, in pertinent part, provides:

> Where a municipality elects to join the system established by this act, and is then maintaining a retirement or pension system or systems covering its employes in whole or in part, those employes so covered, and employes thereafter eligible to join such pension systems shall not become members of the retirement system established by this act, unless at the time the municipality elects to join the system, the members of each such existing retirement or pension system shall, by the affirmative vote of seventy-five per cent of all the members of each pension system, elect to be covered by the retirement system established by this act. At any time thereafter, within a period of three years after the municipality has elected to join the system, but not thereafter, the members of an existing retirement or pension system may, in like manner, elect to join the system established by this act....
>
> ....
>
> *If a municipality elects to cover its municipal firemen under the provisions of the system created by this Article III, then each municipal fireman shall be required to become a member of the system.*

53 P.S. § 881.303 (Supp.1984–85) (emphasis added). Appellants argue that the emphasized portion of Section 303

evidences the legislature's intention that all firefighters of a municipality must belong to the same pension plan.

The City and the trial court, however, had a different view, reasoning that a reading of the entire Pennsylvania Municipal Retirement Law shows no legislative prohibition against two separate pension plans for a municipality's firefighters. The City argues that allowing seventy-five per cent of the members of the Pension Fund to force the remaining twenty-five per cent to join the Retirement System would violate the rights of the minority; therefore, according to this argument, requiring such a vote would emasculate the Pennsylvania Municipal Retirement Law and its benefits to the municipality including, inter alia, the ability to join a more actuarily sound pension system.[1] These arguments, however, ignore one important clause of Section 303, which states, "[i]f a municipality elects to cover its municipal firemen under the provisions of the system created by this Article III, then *each* municipal fireman *shall be required* to become a member of the system." 53 P.S. § 881.303 (Supp.1984–85) (emphasis added.)

The Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b) (Supp.1964–83) provides, "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." We believe the aforequoted portion of Section 303 is clear and can be interpreted in only one manner; i.e., where a municipality wishes to join the Retirement System, and already has its firefighters enrolled in another plan, either all of the firefighters must become members or the firefighters as a whole must be excluded from joining the Retirement System. This conclusion is buttressed by re-

1. As no election was held in this case, we are not presented with a question concerning the rights of a minority who would wish to remain members of an existing system. Accordingly, we express no opinion on that question. As to the fiscal integrity of any existing system, it is well settled that the terms and conditions of such a plan may be altered if necessary to protect the actuarial soundness of a plan. *Harvey v. Retirement Board of Allegheny County*, 392 Pa. 421, 141 A.2d 197 (1958); *Eisenberger v. Harrisburg Police Pension Fund*, 400 Pa. 418, 162 A.2d 347 (1960).

viewing Section 303, especially the first paragraph thereof. The legislature was very specific in covering all contingencies. Had the legislature wished to permit the existence of two pension plans, one of which was the Retirement System, it could have done so in a concise fashion. The Pennsylvania Municipal Retirement Law does not do so; in fact, the legislature included the previously mentioned language of Section 303 which leads to the opposite inescapable conclusion.

Accordingly, the trial court erred in granting the City's motion for summary judgment.